***********
The Full Commission reviewed the prior Opinion and Award with reference to the errors assigned by plaintiff based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral arguments of the parties. Plaintiff has not shown good grounds to receive further evidence or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission AFFIRMS with minor modifications the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as a matter of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. The employer/employee relationship existed between the named employee and the named employer.
3. The NCME Fund on the risk is correctly named above.
4. The employee's average weekly wage is $312.60 yielding a compensation rate of $208.41.
5. The alleged date of injury is February 14, 2008, with the exact date to be determined by the Industrial Commission.
6. The parties stipulated into evidence as Stipulated Exhibit # 1, a Pre-Trial Agreement, as modified and initialed by the parties.
7. The parties stipulated into evidence as Stipulated Exhibit # 2, Medical Records.
8. The parties stipulated into evidence as Stipulated Exhibit # 3, Industrial Commission Forms.
9. The parties stipulated into evidence as Stipulated Exhibit # 4, Discovery Documentation.
10. The parties stipulated into evidence as Stipulated Exhibit # 5, Employment documentation.
 ***********
The following issues are before the Full Commission for determination:
 PLAINTIFF'S ISSUES
1. Was the plaintiff injured by accident while in the scope of her employment on or about February 14, 2008, as defined by N.C. Gen. Stat. § 97-2(6)? *Page 3 
2. To what, if any, indemnity benefits is the plaintiff entitled?
3. Is the plaintiff entitled to ongoing medical treatment for injuries sustained in the alleged accident arising out of and in the course of her employment?
4. Is the plaintiff entitled to have medical bills paid for injuries sustained in the alleged accident arising out of and in the course of her employment?
 DEFENDANT'S ISSUES
1. Whether the plaintiff's current disability, if any, is a consequence of pre-existing medical conditions.
2. Whether the plaintiff's inability to work is a consequence of her alleged work injury.
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed on February 14, 2008 as a teacher in defendant-employer's child care center.
2. Plaintiff alleges that she sustained a fall at work on February 14, 2008 and sustained an injury to her right hand and left knee. Although plaintiff contends that she reported the incident to defendant-employer on February 14 or February 15, 2008, the credible evidence establishes that plaintiff did not report an incident until February 19, 2008.
3. Plaintiff prepared and signed an incident report on February 19, 2008, alleging that she sustained an injury by accident on February 14, 2008. *Page 4 
4. Plaintiff reported to the Emergency Department on February 16, 2008, and complained of pain in her right hand. The medical record indicates that plaintiff sustained a fall at home on February 15, 2008. X-rays were negative. Plaintiff was diagnosed with right hand sprain and advised that she could return to work on February 18, 2008.
5. Plaintiff worked a full day with defendant-employer on both February 14, 2008, and February 15, 2008, other than when she left work on February 15, 2008, to attend classes.
Plaintiff worked on her second job at Wheels Skating Rink on February 15, 2008, from 6:30-10:00 p.m. Plaintiff worked for defendant-employer on February 18, 2008.
6. Plaintiff first reported the alleged work incident on February 19, 2008, the date she filled out an incident report. Plaintiff's employment file contained no medical notes or restrictions related to the alleged work injury of February 14, 2008.
7. Prior to the alleged work-related accident of February 14, 2008, plaintiff had been diagnosed with Dequervain's syndrome of her right wrist in or around May 1985 and underwent a Dequervain's release in or around September 1985.
8. In January, 1986, plaintiff was diagnosed with reflex sympathetic dystrophy (RSD) in her right hand. In July 1986, plaintiff was given a permanent partial impairment rating to her right upper extremity of 40 percent.
9. Plaintiff was prescribed Tegretol in 1986 by Dr. Clarence Ballenger to help control her symptoms of RSD. Plaintiff has continued to take Tegretol and has continued to treat with Dr. Ballenger through March 2008.
10. Medical records indicate that plaintiff previously sustained multiple falls including a fall in 2005, at Food Lion in which plaintiff sustained an injury to her right hand for which plaintiff received work restrictions and settlement proceeds. *Page 5 
11. Plaintiff was seen in the emergency room in December 2007, but such records were not supplied to defendants or produced at the hearing. It appears that such condition or injury prompted plaintiff to seek treatment with a chiropractor. Chiropractor records from December 2007, and January 2008, indicate that plaintiff was being treated for a neck condition, which was causing pain to radiate into plaintiff's arms and that plaintiff sustained a fall at home on December 31, 2007, and hit her head.
12. Plaintiff was seen in the emergency room in January 2008, a month before her alleged work injury, and reported chest pain and right arm pain that had been on-going for three days. Plaintiff had worn a brace or sling to work on her right hand/wrist prior to February 14, 2008.
13. Plaintiff saw her primary physician, Dr. Robert Krause, on February 27, 2008, and reported continued thumb pain. Dr. Krause diagnosed plaintiff with right wrist sprain and advised her to see an orthopaedist.
14. After February 14, 2008, plaintiff continued to work her normal duties until she was terminated on February 28, 2008. Plaintiff's termination was unrelated to her alleged work accident or injury, but rather was the result of plaintiff's attitude and complaints. In addition, plaintiff had had two serious incidents since December 2007. One incident, which had caused defendant-employer to only receive a provisional license from the State, was when plaintiff had left a child on the school bus. This incident caused defendant-employer to have plaintiff relocated to another facility, and to take away plaintiff's job duty of driving a bus. The second incident was at the end of February 2008, when plaintiff had left a classroom, which created a teacher/staff to child ratio problem. *Page 6 
15. Plaintiff saw Dr. Derrick Hickey on March 11, 2008, and reported that she sustained an injury to her hand at work on February 14, 2008. Dr. Hickey diagnosed plaintiff with right wrist sprain, recommended that plaintiff wear a brace, and ordered a CT scan. X-rays of Plaintiff's right wrist were negative.
16. Plaintiff underwent X-rays again on March 19, 2008, which were negative.
17. Plaintiff underwent a CT scan of her right wrist on March 21, 2008, which demonstrated either fusion or a remote injury, or a developmental anomaly.
18. Plaintiff saw Dr. Hickey again on April 21, 2008. He noted that plaintiff's symptoms and CT results were consistent with a right wrist sprain. Plaintiff was given restrictions of light duty with no lifting greater than 10 pounds with her right hand.
19. Plaintiff saw Dr. Hickey on May 12, 2008, and for the first time reported left knee pain which she alleged she sustained during the February 14, 2008, incident. Plaintiff was diagnosed with a mild contusion and X-rays were planned for plaintiff's knee. Plaintiff was released to return to work with no lifting over 15 pounds with her right hand.
20. On June 11, 2008, Dr. Hickey gave plaintiff a cortisone injection in her left knee and advised her to continue with therapy. On July 16, 2008, plaintiff reported discoloration of her hand and burning pain. Dr. Hickey noted that he was concerned that plaintiff was developing complex regional pain syndrome (CRPS).
21. On August 20, 2008, plaintiff reported the same complaints plus complaints of decreased sensation in her right hand. Dr. Hickey noted that he was not sure whether the symptoms were due to the carpometacarpal (CMC) joint injury that plaintiff allegedly sustained from her February 14, 2008 fall at work, or Dequervains. *Page 7 
22. Plaintiff had previously been diagnosed with Dequervains and undergone a Dequervains release and had also previously been diagnosed with reflex sympathetic dystrophy (RSD), but Dr. Hickey was not aware of that information.
23. Plaintiff was referred to pain management and given work restrictions of no lifting greater than 15 pounds with her right hand.
24. On September 22, 2008, plaintiff underwent electrodiagnostic studies with Dr. Anna Peacock Bettendorf. The electrodiagnostic studies were normal.
25. Plaintiff was not written out of work, given permanent restrictions, nor assigned a permanent partial impairment rating.
26. After plaintiff was terminated on February 28, 2008, she continued to work at Wheels Skating Rink. Defendant-employer had work available and would have been able to accommodate plaintiff's work restrictions, as they had previously accommodated her other work restrictions, had plaintiff not been terminated.
27. Plaintiff collected unemployment, benefits for at least 26 weeks. Plaintiff also worked at Wiz Mart on occasion when she was called and offered work, if she needed money.
28. Plaintiff submitted a list of potential employers for whom she filled out applications or contacted about employment, but admitted during the hearing that although she may have filled out an application, such did not mean she submitted the application to the potential employer.
29. Dr. Krause is a physician who is board certified in family practice. Plaintiff saw Dr. Krause regarding her right hand condition on February 27, 2008. Dr. Krause recommended that plaintiff see an orthopaedist. Plaintiff returned to Dr. Krause in November 2008, after she had been diagnosed with CRPS. *Page 8 
30. When asked to give an opinion on the cause of plaintiff's RSD/CRPS, Dr. Krause indicated that plaintiff had a vitamin B-12 deficiency which could have contributed to that condition. Dr. Krause testified that he has not learned enough about RSD to diagnose it and usually a pain specialist makes that diagnosis.
31. Dr. Krause testified that because plaintiff had a B-12 deficiency as well as decreased sensation in both her right arm and right foot, he began to opine that plaintiff's wrist condition was not just a local injury or dystrophy in the wrist, but might be a more "generalized dystrophy."
32. Dr. Krause further testified that any causation opinion he had linking plaintiff's RSD with the alleged fall at work was due to the sequence or timing, in that plaintiff developed symptoms of RSD after the alleged work fall.
33. Dr. Derrick Hickey first saw Plaintiff on March 11, 2008. Plaintiff complained of right wrist pain, but did not report left knee pain until April or May 2008.
34. Dr. Hickey opined that plaintiff's left knee condition was pretty benign and that he was never able to get a good handle on how much pain plaintiff was experiencing as to her right hand condition or whether there were secondary gain issues. He testified that plaintiff would complain of significant pain, but would not want to undergo injections or other methods of treatment.
35. Dr. Hickey further testified that on July 16, 2008, the symptoms plaintiff reported were completely changed from what she had previously reported to him. Dr. Hickey did not know whether plaintiff had sustained another injury or what had caused the change in symptoms. Dr. Hickey opined that plaintiff had developed symptoms of CRPS. *Page 9 
36. Dr. Hickey testified that if plaintiff had previously been diagnosed with CRPS (or RSD) then he could perhaps ascribe her current symptoms to her prior injury. Dr. Hickey was unaware that plaintiff carried a previous diagnosis of RSD and stated it would have been significant information for him to know.
37. Dr. Hickey also did not know that plaintiff had previously been assigned a 40 percent disability rating to her right upper extremity and stated that such information would have been significant for him to know.
38. Dr. Hickey agreed that Tegretol can be used to treat RSD/CRPS and that he did not know that plaintiff was taking such on a daily basis. He was not aware that plaintiff had been treating with Dr. Ballenger, a neurologist.
39. Dr. Hickey agreed that if plaintiff was being treated for restless leg syndrome in 2007, it might be significant to the hand symptoms she was experiencing in July 2008, in that such is also likely a disorder of the nervous system.
40. Dr. Hickey was not aware that plaintiff treated with a chiropractor in December 2007, for neck problems and pain radiating into her arms. He had not seen plaintiff's other medical records.
41. Dr. Hickey does not know whether the event, which precipitated plaintiff's recurrence of RSD, was something that occurred in February 2008, or something that occurred in June 2008, or something that occurred in between.
42. Dr. Hickey testified that, since plaintiff's alleged work fall was in February 2008, and her CRPS symptoms did not re-emerge until July 2008, the time lapse between the CRPS and the alleged inciting event is longer than he would expect to see. He would have expected the CRPS to have developed within no more than 60 days of the inciting event. *Page 10 
43. Based upon a weighing of the testimony given in this case by Dr. Hickey, especially the testimony given on cross-examination, the Full Commission finds that any causation opinion given by Dr. Hickey regarding plaintiff's alleged February 14, 2008 work injury is at best speculative, and based upon mere conjecture. Therefore, this testimony given by Dr. Hickey is given little weight. Dr. Hickey stated that his initial opinion on causation was based in part on a belief that Plaintiff did not have symptoms of RSD prior to the incident but only developed them post accident.
44. Based upon the greater weight of the evidence, plaintiff has not proven that she sustained an injury by accident at work on February 14, 2008 or that she is disabled as the result of a work-related accident on February 14, 2008. Plaintiff's testimony that she injured herself at work on February 14, 2008 is not found to be credible considering the medical record of February 16, 2008 indicating she reported that her right hand pain began when she fell at home on February 15, 2008 and caught herself with her hand and also plaintiff's other actions and statements following February 14, 2008.
45. The testimony of owner Ms. Dianne Rosado that plaintiff was terminated for reasons other than the alleged work accident and injury is deemed to be credible.
46. The testimony of Supervisor Denise Wethington that plaintiff did not report a work incident or injury to her until February 19, 2008 is deemed to be credible.
47. The testimony of Secretary Gail Norris that plaintiff did not report a work incident or alleged injury to her until February 19, 2008 is deemed credible.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 11 
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of proof to show that her injuries are a result of a work-related accident. Henry v. A.C. LawrenceLeather Co., 231 N.C. 477, 57 S.E.2d 760 (1950); Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). In the present case, plaintiff failed to establish by the greater weight of the evidence that she sustained a fall resulting in an injury during the course and scope of her employment with defendant-employer on February 14, 2008. Plaintiff's testimony that she sustained a fall at work on February 14, 2008 has not been found to be credible. N.C. Gen. Stat. § 97-2(6).
2. The opinions given as to causation of plaintiff's symptoms of RSD or CRPS by Dr. Hickey and Dr. Krause were too speculative to be accepted as competent evidence. Young v. Hickory Bus.Furniture, 353 N.C. 227; 538 S.E.2d 912 (2000).
3. Plaintiff has not proffered sufficient competent medical evidence that she suffered an injury to her right hand and left knee as a result of a work-related accident on February 14, 2008, or that she was disabled as a result of such. N.C. Gen. Stat. §§ 97-2(6), 97-9.
4. Plaintiff failed to establish that she suffered an aggravation or a worsening of a pre-existing condition as a result of a work-related accident of February 14, 2008. The evidence establishes that plaintiff's right hand may have become painful due to a flare of her pre-existing condition or some other non-work related incident; however, the evidence has not established that a fall at work on February 14, 2008 either happened or worsened any pre-existing injury, or caused plaintiff disabling pain.Henry v. A.C. Lawrence Leather Co.,231 N.C. 477, 57 S.E.2d 760 (1950).
5. Plaintiff has failed to prove disability as a result of a work-related injury. N.C. Gen. Stat. § 97-9. *Page 12 
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is and must be DENIED.
2. Each side shall bear its own costs.
This the ___day of March 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ LAURA K. MAVRETIC COMMISSIONER
 S/_____________ STACI T. MEYER COMMISSIONER